CUMMINGTON PRESERVATION
COMMITTEE,
Plaintiff-Appellant,

v.

FEDERAL AVIATION ADMINISTRA-
TION et al., Defendants-Appellees.

No. 75–1198.

United States Court of Appeals,
First Circuit.

Argued Sept. 11, 1975.

Decided Oct. 23, 1975.

William A. Norris, Cummington, Mass., for plaintiff-appellant.

Kathryn A. Oberly, Atty., Dept. of Justice with whom Wallace H. Johnson, Asst. Atty. Gen., Washington, D. C., James N. Gabriel, U. S. Atty., James J. O'Leary, Asst. U. S. Atty., Boston, Mass., and Jacques B. Gelin, Atty., Dept. of Justice, Washington, D. C., were on brief, for defendants-appellees.

Before COFFIN, Chief Judge, and McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

This action was brought by the Cummington Preservation Committee under the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321 *et seq.* (1970) and the Administrative Proce-

dure Act, 5 U.S.C. §§ 702 and 706 (1970), to enjoin the Federal Aviation Administration (FAA) from constructing a radar facility and a paved access road on Bryant Mountain in Cummington, Massachusetts. In addition to state and local claims, rejected by the district court and not pursued on appeal, plaintiff contended that the FAA did not give the required consideration to environmental factors in deciding to construct its proposed Air Route Surveillance Radar (ARSR) facility on Bryant Mountain and, hence, failed to comply with NEPA. Specifically, plaintiff claimed that the final Environmental Impact Statement (EIS)[1] filed by the FAA did not meet the requirements of Section 102(2) of NEPA, 42 U.S.C. § 4332(2). Plaintiff's motion for a preliminary injunction (to enjoin construction of the ARSR) was consolidated with the trial on the merits under Rule 65(a)(2) of the Federal Rules of Civil Procedure. The district court found for the defendants and denied injunctive relief. This appeal followed.

At issue is the location of a new ARSR facility to furnish data to the Boston Air Route Traffic Control Center, which is situated in Nashua, New Hampshire and controls virtually all enroute air traffic in New England, portions of upper New York State, and an area extending 100 miles east of New England. The Cummington site was proposed as a partial replacement for an ARSR site in Saratoga, New York;[2] the Saratoga site is no longer adequate to cope with modern air traffic requirements because of the deficient quality of its equipment and because of its geographical location.

The proposed Bryant Mountain ARSR facility is best described in the words of the final EIS:

"c. *Structures.* The electronic equipment would be housed in a one-story concrete block building containing 3,800 square feet. A 175 KW standby diesel engine generator would be housed in one end of this building. An additional block building 16' × 13' — 4" would house emergency snow equipment. The radar antenna and a 23-foot by 42-foot reflector, with its associated drive mechanism, would be mounted on top of a 50-foot steel tower. The antenna and reflector would continuously rotate at five revolutions per minute. A 38'—8" high white geodesic dome, electrically transparent would be used to protect the antenna system from the elements and permit smooth rotation in high winds. This geodesic dome would be the only item visible from afar. (Exhibit 4). A wood garage building would be erected on a leased plot at the base of the hill to house a track snow vehicle for use during adverse winter weather." (EIS, *supra*, note 1, at 9.)

The concrete block building described in the EIS would be located on a 200 × 200-foot plot at the summit of Bryant Mountain. The plot would be leased by the FAA from a local landowner. A substantial amount of tree removal would be required on the site. The EIS outlines various specific steps which would be taken by the FAA to minimize the adverse environmental effect of the project. EIS at 16–17.

---

1. "Department of Transportation, Federal Aviation Administration (Final) Environmental Impact Statement, Establishment of an Air Route Surveillance Radar Facility, Cummington, Massachusetts" (July 1974).

   This "final" Environmental Impact Statement was prepared as a result of earlier litigation settled by entry of a consent decree.

2. The Raytheon Corporation was commissioned by the FAA to conduct a field study to find suitable sites for the ARSR facilities needed to replace the Saratoga facility. After submitting one report describing four sites that failed to satisfy the FAA's operational requirements, Raytheon submitted a second report which discussed four possible sites in the vicinity of the towns of Cummington and Worthington in the southern Berkshires. Raytheon concluded that the summit of Bryant Mountain in the Town of Cummington would be the location best suited to the FAA's technical needs and so informed the FAA. The FAA evaluated Raytheon's conclusions and agreed with them.

The EIS states that access to the ARSR site from the nearest paved road would be partly by Powell Road (an existing town road) and partly by a private drive to be built as part of this project on a right-of-way across the land of two private parties. This private drive would not be open to the general public, but would be for the exclusive use of the FAA subject to the rights of the property owners. EIS at 16.

Telephone and power service would be brought to the ARSR site by pole lines along Powell Road and the private access road. While the EIS notes that the existence of these utilities could facilitate future development along Powell Road, it also states that only the FAA and its lessor could at present use the services on the private access road.[3]

Plaintiff has four objections to the site selection process as reflected in the EIS, viz. that the EIS did not adequately discuss the possibility of future development of Bryant Mountain, that it did not adequately discuss alternative locations within the towns of Cummington and Worthington, that it did not adequately discuss alternative locations outside the Cummington-Worthington area, and finally that there was an inadequate administrative record to support the FAA's site selection.

■ Plaintiff's last argument may be quickly dismissed. At no point in the district court proceedings did plaintiff question the completeness of the administrative record introduced by the FAA. Thus, plaintiff may not now be heard to raise this issue when he failed to do so below. *See Skogen v. Dow Chemical Co.*, 375 F.2d 692, 703 (8th Cir. 1967). Moreover, in this case not only did plaintiff fail to object below, but he affirmatively indicated that he was satisfied that the record was complete; in his "Motion for a Permanent Injunction,"

filed after the trial in the district court, plaintiff stated:

"On April 10, 1975, in Springfield, this Honorable Court sat in hearing of the plaintiff's motion for a preliminary injunction. At that time the defendants introduced the complete administrative record relative to this case and controversy as well as affidavits in lieu of testimony of witnesses who were available and in court on April 10, 1975. The evidence introduced by both parties at the aforesaid hearing and the various attachments to the parties' pleadings contain all the information relative to the matter."

Because of this statement as well as the lack of objection below, we will consider plaintiff's substantive objections in the light of the administrative record which was introduced into evidence.

■ As to these substantive objections, the criterion which must guide our review is essentially that of clear error. "Having failed to convince the trial court that the EIS was inadequate, the plaintiffs must now demonstrate that the lower court's findings accepting the EIS as adequate and the decision to proceed as permissible were clearly erroneous." *Sierra Club v. Morton*, 510 F.2d 813, 818 (5th Cir. 1975). Our role is not to substitute our judgment for that of the district court, but simply to see if the court avoided clear error in its determination of "whether the EIS was compiled with objective good faith and whether the resulting statement would permit a decisionmaker to fully consider and balance the environmental factors." *Id.* at 819. We find that the district court's determination was free of clear error, and we therefore affirm.

■ The discussion in the EIS of future development of Bryant Mountain resulting from the ARSR project, while less than fully satisfactory, is minimally

---

**3.** We recognize that the Achilles' heel of this EIS is its uncertainty concerning the course of future development of the area. Nevertheless, it has set forth the known "hard" facts relevant to future development. Presently unforeseeable contingencies may come to influence the course of the area's development (or non-development); but, by definition, such contingencies are not now an issue before this court.

adequate. Cognizant of the requirement that an EIS must not only point to potential environmental problems but must also evaluate them, *see Sierra Club, supra* at 819, the FAA conceded that the installation of power lines and the surfacing of the Bryant Mountain access road might eventually encourage further development of this area, but it also noted that much of this development could not take place without the approval[4] of the Town of Cummington:

"Some individuals have expressed concern that the ARSR would open up surrounding land for development. Although power would be brought to the facility site and a private access road would be constructed, the ultimate development of the surrounding land is under the jurisdiction and control of the town in which it is located, through the residents themselves, the Selectmen, the Planning Board and other elected or appointed commissions." (EIS, *supra,* note 1, at 14.)

The precise issue of how the project might influence future development was not directly addressed; on the other hand it is not clear how much further the analysis could meaningfully be taken, so much being contingent upon unknown factors. Under all the circumstances we believe the EIS can be said to constitute a statement which "enable[s] those who did not have a part in its compilation to understand and consider meaningfully the factors involved." *Environmental Defense Fund v. Corps of Engineers,* 492 F.2d 1123, 1136 (5th Cir. 1974).

Plaintiff also claims that the EIS did not adequately discuss alternative locations for the ARSR within the towns of Cummington and Worthington. We agree with the district court that the

EIS might well have made a more detailed comparison between Bryant Mountain and the three alternate sites (Bashan Hill, Cole Hill, and Knolls Hill). But we also agree with the court that this shortcoming of the EIS does not render it inadequate as a matter of law. The advantages and disadvantages were discussed with sufficient information presented to permit the decisionmakers intelligently to choose from among the sites. "[T]he discussion of environmental effects of alternatives need not be exhaustive. What is required is information sufficient to permit a reasoned choice of alternatives so far as environmental aspects are concerned." *Natural Resources Defense Council, Inc. v. Morton,* 148 U.S.App.D.C. 5, 458 F.2d 827, 836 (1972).

■ Finally, plaintiff contends that there was inadequate discussion in the EIS of alternative locations outside the Cummington-Worthington area. The EIS does not evaluate the environmental costs and benefits of the outside sites mentioned in the second Raytheon report. Instead, it expresses the view that a discussion of such outside sites would be fruitless because the FAA determined, on the basis of scientific evidence,[5] that the area bounded by West Cummington Center, East Windsor Center, Worthington Corners and Swift River offered "the greatest potential for meeting coverage requirements." EIS at 24. An EIS need not discuss every conceivable alternative plan of action, but only those which are reasonable. *Life of the Land v. Brinegar,* 485 F.2d 460, 472 (9th Cir. 1973). We believe the FAA met the rule of reason which governs compliance with the EIS requirement of NEPA. *Sierra Club v. Morton, supra* at 819.[6]

---

4. It should be noted, however, that governmental control is inherently limited, and there is much that landowners can do without approval.

5. *See* EIS, pp. 3–5 and Exhibit 1 ("Minimum Radar Coverage Requirements 'Hartford' FPS–60 Series Radar Systems").

6. Here the record contains no evidence that the FAA failed, at any stage in the decision-making process, to consider technologically reasonable alternatives.

The EIS as a whole could have reflected a greater degree of sensitivity and responsiveness to the spirit of NEPA.[7] The past few years have witnessed a "commitment of the Government to control, at long last, the destructive engine of material 'progress.'" *Calvert Cliffs' Coordinating Committee v. Atomic Energy Commission*, 146 U.S. App.D.C. 33, 449 F.2d 1109, 1111 (1971) (Wright, J.). A talismanic invocation of "progress" or "necessity" cannot suffice to guarantee approval of projects which are inconsistent with the goals of NEPA. "Our duty . . . is to see that important legislative purposes, heralded in the halls of Congress, are not lost or misdirected in the vast hallways of the federal bureaucracy." *Id.*

In this case, however, we find no clear error in the court's finding; accordingly, its decision is affirmed.

---

**7.** The initial clauses of the Act clearly reflect some of the ideals which it attempts to further: "The purposes of this chapter are: To declare a national policy which will encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; . . . ." 42 U.S.C. § 4321.